IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**NEWPORT FISHERMEN'S WIVES, INC.**, an Oregon nonprofit corporation, **CITY OF NEWPORT, LINCOLN COUNTY**, and **PORT OF NEWPORT**,

    Plaintiffs,

    v.

**UNITED STATES COAST GUARD**, an agency of the United States Department of Homeland Security,

    Defendant.
_____

Civ. No. 6:14-cv-01890-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

    The Coast Guard Air Facility located in Newport, Oregon (AIRFAC Newport), is a detachment of Air Station North Bend. AIRFAC Newport sustains a single MH-65 helicopter and four-person crew on a rotating twenty-four hour basis. In early October 2014, the city of Newport received notice that AIRFAC Newport would be closed on November 30, 2014 (later delayed until December 15, 2014), after nearly three decades in operation. Plaintiffs, concerned with the loss of this local search and rescue (SAR) resource, petitioned this Court to enjoin the closure under the Administrative Procedure Act[1] for violations of the National Environmental Policy Act[2] and the Homeland Security Act.[3]

---

[1] Administrative Procedure Act, Pub. L. No. 79-404, 60 Stat. 237 (codified as amended in scattered sections of 5 U.S.C.).
[2] National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321–4370h.

1 – OPINION AND ORDER

While the case was pending before this Court, the Howard Coble Coast Guard and Maritime Transportation Act of 2014[4] was signed into law by the President. The Coast Guard, in reliance on the Coble Act, which prohibits closure of AIRFAC Newport until January 1, 2016, moves to dismiss this litigation as moot.

This Court is asked to consider whether plaintiffs' existing claims are moot and, to the extent those claims are based on future conduct, whether those claims are ripe for adjudication. Because this Court is unable to form a reasonable expectation that the Coast Guard will reengage in allegedly wrongful behavior, this Court finds that plaintiffs' existing claims are moot and, to the extent those claims are based on future conduct, those claims are not yet ripe for adjudication. Thus, defendant's motion to dismiss, ECF No. 36, is GRANTED, and plaintiffs' motion for stay, ECF No. 38, is DENIED.

## PROCEDURAL AND FACTUAL BACKGROUND

This action arose out of the formerly pending, but now cancelled, closure of AIRFAC Newport scheduled for November 30, 2014 (later delayed until December 15, 2014).

AIRFAC Newport was established in 1987 following the tragic loss of the trawler Lasseigne and its three-person crew in November 1985. *See* Decl. of Ginny Goblirsch 2, ECF No. 7. The AIRFAC Newport location was intended to facilitate SAR missions between Air Station Astoria, which is located 95 nautical miles to the north, and Air Station North Bend, which is located approximately 70 miles to the south. *See* Decl. of Christopher A. Martino 2, ECF No. 19. AIRFAC Newport, itself a detachment of Air Station North Bend, does not house permanent personnel. *Id*. at 3. Instead, each day, a MH-65 helicopter crewed by a pilot, copilot,

---

[3] Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (codified as amended in scattered sections of U.S.C.).
[4] Howard Coble Coast Guard and Maritime Transportation Act of 2014 (Coble Act), Pub. L. No. 113-281, 128 Stat. 3022 (codified in scattered sections of U.S.C.).

2 – OPINION AND ORDER

flight mechanic, and rescue swimmer, travels from Air Station North Bend to AIRFAC Newport and remains on standby for a twenty-four hour shift. *Id.* Following each twenty-four hour shift, the standby helicopter and crew are replaced by another helicopter and crew from Air Station North Bend. *Id.*

On or about February 2012, the Coast Guard began considering the closure of AIRFAC Newport and an additional AIRFAC in Charleston, South Carolina. *Id.* at 7. In March 2012, the Coast Guard preliminarily determined that both closures fell under a categorical exclusion to NEPA. *Id.*

On April 10, 2013, the Coast Guard proposed the closures of both AIRFAC locations in the President's Budget for Fiscal Year 2014. *Id.* On April 23, 2013, Coast Guard Commandant Admiral Robert Papp, Jr. testified before the Senate Committee on Commerce, Science, and Transportation regarding the closures. He stated:

> The Coast Guard will also consolidate regional assets where overlapping capabilities exist by closing Air Facilities in Newport, OR and Charleston, SC. The 2014 budget ensures that our resources are aligned to our Nation's highest priorities in a manner that balances key investments for the future with sustaining essential investment in today's missions and capabilities that provide the highest return on investment.

*Id.* at 8.

On January 17, 2014, the Consolidated Appropriations Act[5] was signed into law. This Act approved the Coast Guard's budget request, which included both proposed closures. *Id.*

In a letter received October 2, 2014, Rear Admiral R. T. Gromlich notified Lance Vanderbeck, Newport's Manager of Airport Operations, that "the Coast Guard ha[d] decided to

---

[5] Consolidated Appropriations Act, 2014, Pub. L. No. 113-76, 128 Stat. 5 (codified in scattered sections of U.S.C.).

3 – OPINION AND ORDER

close our Air Facility in Newport, Oregon on November 30, 2014." Compl. 1, ECF No. 1-1. Rear Admiral Gromlich further provided:

> Through targeted investment in vital recapitalization projects, the Coast Guard has significantly improved our SAR response posture. Specifically, we have deployed the Coast Guard's Rescue 21 communications and distress calling system, which provides us with significantly improved detection capability, as well as the ability to use radio signals to more efficiently locate mariners in distress. In addition, there have been improvements in safety and survival equipment that greatly increase the chance of survival and detection for imperiled mariners. Given these improvements in the overall SAR system, the Coast Guard will consolidate air operations in Southern Oregon at our Air Station in North Bend while continuing to meet all national SAR response standards.

*Id.*

Between October 23, 2014 and November 10, 2014, the Coast Guard completed an environmental checklist and made a Categorical Exclusion Determination (CED). *See* Decl. of Christopher A. Martino 1–3, ECF No. 19-3. Pursuant to this CED, the Coast Guard determined that both AIRFAC closures were exempt under NEPA from additional environmental findings. *Id.* at 1.

The Coast Guard subsequently agreed to extend the closures dates for both AIRFAC locations from November 30, 2014 to December 15, 2014. *See* Compl. 5, ECF No. 1.

On November 25, 2014, plaintiffs filed this action seeking to enjoin the Coast Guard from closing AIRFAC Newport. *Id.* at 1–11.

On December 10, 2014, Congress passed the Coble Act, which was later signed into law by the President on December 18, 2014. The Coble Act provides, in relevant part:

    (b) PROHIBITION.—

        (1) IN GENERAL.—The Coast Guard may not—

4 – OPINION AND ORDER

> (A) close a Coast Guard air facility that was in operation on November 30, 2014; or
>
> (B) retire, transfer, relocate, or deploy an aviation asset from an air facility described in subparagraph (A) for the purpose of closing such facility.
>
> (2) SUNSET.—this subsection is repealed effective January 1, 2016.

Pub. L. No. 113-281, § 225(b), 128 Stat. 3022, 3039.

Following enactment of the Coble Act, the Coast Guard filed this motion to dismiss for lack of jurisdiction.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

While considering a motion to dismiss, the Court must accept all allegations of material fact as true and construe them in the light most favorable to the non-movant. *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). If the complaint is dismissed, leave to amend should be granted unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (citations and internal quotation marks omitted).

5 – OPINION AND ORDER

**DISCUSSION**

Article III of the Constitution limits the jurisdiction of federal courts to resolving actual cases or controversies. *City of L.A. v. Lyons*, 461 U.S. 95, 101 (1983) (citations omitted). This limitation "requires that an actual, ongoing controversy exist at all stages of federal court proceedings." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011) (citation omitted). If the parties' dispute no longer exists, or if the parties lack a legally cognizable interest in the outcome of the litigation, this Court must dismiss the case as moot. *See id.* at 1086–87 (citations omitted).

Defendant argues that plaintiffs' claims have been rendered moot by defendant's decision to continue operations at AIRFAC Newport and the enactment of the Coble Act, which prohibits closure of AIRFAC Newport until January 1, 2016. *See* Def.'s Mot. Dismiss 6–7, ECF No. 36. Plaintiffs argue, in response, that the cancelled closure falls under the "voluntary cessation" exception to mootness. *See* Pls.' Mem. Opp'n 4–5, ECF No. 39. This Court looks to the "voluntary cessation" exception.

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citation and internal quotation marks omitted). "[I]f it did, the courts would be compelled to leave [t]he defendant . . . free to return to his old ways." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982) (citation and internal quotation marks omitted); *see also Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012). The party asserting mootness must meet a heavy burden; it must be absolutely clear that the allegedly wrongful behavior will not recur if the lawsuit is dismissed. *See Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*, 581 F.3d

6 – OPINION AND ORDER

1169, 1173 (9th Cir. 2009) (citing *Laidlaw*, 528 U.S. at 189). This burden prevents parties from evading judicial review by temporarily altering questionable behavior. *See City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001) (citations omitted).

Defendant asserts that its cessation is not "voluntary" because the Coble Act compelled continued operations at AIRFAC Newport. *See* Def.'s Reply Mot. Dismiss 5, ECF No. 41. Consistent with defendant's assertion, a statutory change is "*usually enough* to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994) (emphasis added); *see also Smith v. Univ. of Wash., Law Sch.*, 233 F.3d 1188, 1194–95 (9th Cir. 2000) ("[I]t is generally fair to say that when a change of position is wrought by a statutory provision, the change is neither voluntary nor likely to be resiled from at any time in the foreseeable future."). But, this general rule does not apply "where it is virtually certain that the repealed law will be reenacted." *Noatak*, 28 F.3d at 1510 (citing *Aladdin's Castle*, 455 U.S. at 289). The law at issue, section 225(b) of the Coble Act, is *virtually certain* to be repealed: "[t]his subsection is repealed effective January 1, 2016." As a result, this Court's mootness analysis turns on whether there is a *reasonable* expectation that the allegedly wrongful behavior will recur if the lawsuit is dismissed. *Noatak*, 38 F.3d at 1510 (citation omitted); *see also Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1274 (9th Cir. 1998) (stating that a case may become moot if (1) subsequent events make it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur and (2) interim relief or events completely and irrevocably eradicated the effects of the alleged violation (citations omitted)).

Section 225(b) of the Coble Act is sufficient to demonstrate that there is *no reasonable expectation* that defendant will close AIRFAC Newport *prior to* January 1, 2016. *Cf. Smith*, 233

7 – OPINION AND ORDER

F.3d at 1195 ("There can be no real expectation that the alleged wrongs will recur now that the people of the state have prohibited them."). Plaintiffs, in reliance on *Or. Natural Res. Council, Inc. v. Grossarth*,[6] *Headwaters, Inc. v. Bureau of Land Mgmt.*,[7] and *Boardman v. Pac. Seafood Grp.*,[8] contend that there is a reasonable expectation that defendant will close AIRFAC Newport immediately after the Coble Act's sunset provision takes effect. Pls.' Mem. Opp'n 5–6, ECF No. 39. This Court looks to *Grossarth*, *Headwaters*, and *Boardman*.

In *Grossarth*, plaintiffs challenged a Forest Service timber sale, in part, because of the Forest Service's alleged failure to prepare an Environmental Impact Statement (EIS) under NEPA. 797 F.2d at 1378. While litigation was pending, the Forest Service, as a result of plaintiffs' administrative appeal, cancelled the timber sale and directed the preparation of an EIS. *Id*. The Ninth Circuit dismissed the action as moot, finding that the Forest Service's actions were not a voluntary cessation, but "instead the result of [plaintiffs'] successful administrative appeal." *Id*. at 1379. The Ninth Circuit also found that a Forest Service statement suggesting a future timber sale following preparation of the EIS was not yet ripe for adjudication. *Id*.

In *Headwaters*, plaintiff sought to enjoin the Bureau of Land Management (BLM) and Janco Logging Co. (Janco) from logging three public domain (PD) units. 893 F.2d at 1013–14. At summary judgment, the district court denied plaintiff's request for injunctive and declaratory relief. *See Headwaters, Inc. v. Bureau of Land Mgmt.*, 684 F. Supp. 1053, 1055–56 (D. Or. 1988) (Headwaters Dist. Ct.). Pending plaintiff's appeal, Janco "cut all of the timber" from the three PD units. *Headwaters*, 893 F.2d at 1014. BLM subsequently moved to dismiss plaintiff's appeal as moot. The Ninth Circuit granted BLM's motion, concluding that it could not "restore the trees

---

[6] 979 F.2d 1377 (9th Cir. 1992).
[7] 893 F.2d 1012 (9th Cir. 1990).
[8] No. 1:15–108–CL (D. Or. Mar. 6, 2015) (pending appeal in Ninth Circuit Case No. 15-35257). Plaintiffs submitted *Boardman* for consideration at oral argument held on April 20, 2015.

8 – OPINION AND ORDER

which were logged" and that "[t]he application of the disputed policies to future sales is too uncertain, and too contingent upon the BLM's discretion, to permit declaratory adjudication predicated on prejudice to [plaintiff's] existing interests." *Id.* at 1015–16 (citations and internal quotation marks omitted).

In *Boardman*, plaintiffs sought to enjoin Pacific Seafood Group (Pacific) from acquiring a controlling ownership interest in another seafood processor, Ocean Gold Seafoods. *See* No. 1:15–108–CL, at 1. While litigation was pending, Pacific stipulated that it would not "enter into any purchase transaction with respect to Ocean Gold Seafoods . . . while the Attorney General's investigation [was] pending. . . . [subject to termination] upon 60-days' prior notice . . . ." *Id.* at 4. Pacific subsequently moved to dismiss the litigation as moot. The district court denied Pacific's motion, explaining:

> Pacific Seafood's stipulation does not negate the parties' conduct that occurred since the conclusion of the prior litigation. More importantly, the economic environment and the parties' motivation to merge or integrate remain unchanged. The AG states that Ocean Gold's current owners appeared motivated to sell and were not optimistic about finding another viable purchaser.

*Id.* at 5 (citations and internal quotation marks omitted).[9]

This Court, having considered *Grossarth*, *Headwaters*, and *Boardman*, finds that all three cases support dismissal on the basis of mootness. For example, in *Grossarth*, the Ninth Circuit dismissed plaintiffs' action despite statements by the Forest Service that it intended to "offer

---

[9] As indicated by the district court, Pacific's alleged wrongful behavior was related to a prior antitrust action, *Whaley v. Pac. Seafood Grp.*, 1:10–cv–3057 (D. Or.), which settled in 2012. *See Boardman*, No. 1:15–108–CL, at 2. In that prior action, Pacific negotiated the acquisition of Ocean Gold during pending litigation. *See id.* Plaintiffs moved for a temporary restraining order blocking the proposed acquisition. *Id.* Pacific subsequently cancelled the transaction, thereby mooting "plaintiff's concerns." *Id.* at 2–3. Assuming that *Boardman* is upheld on appeal, this Court finds that Pacific's prior behavior distinguishes it from this case. Unlike in *Boardman*, the Coast Guard's alleged wrongful behavior was *not* related to any prior action.

9 – OPINION AND ORDER

another sale after preparing the EIS." 797 F.2d at 1379.[10] In contrast, in this case, plaintiffs rely on a less specific, but *more* speculative source, the President's Budget for Fiscal Year 2016.[11] Consistent with *Grossarth*, *Headwaters*, and *Boardman*, this Court is unable to form, based on the President's Budget, a *reasonable* expectation that the Coast Guard will reengage in allegedly wrongful behavior. *See Grossarth*, 797 F.2d at 1379 ("[T]here is in the record before the district court no basis on which we could form a 'reasonable expectation' that there will be a recurrence of the same allegedly unlawful conduct . . . ."); *Headwaters*, 893 F.2d at 1015–16 ("The application of the disputed policies to future sales is too uncertain, and too contingent upon the BLM's discretion, to permit . . . adjudication predicated on prejudice to Headwaters' 'existing interest.'" (citation and internal footnote omitted)); *see also Noatak*, 83 F.3d at 1511 ("[Plaintiff's] fear of possible future injury is insufficient to constitute a reasonable expectation that the same alleged injury will recur."). If, at a later time, defendant reengages in allegedly wrongful behavior, plaintiffs may seek to enjoin such behavior at *that time*. *See Headwaters*, 893 F.2d at 1016 ("Any further timber sales . . . can be attacked in court and restrained if the court finds reason to restrain them."). At this point, however, the nature and effect of such behavior cannot yet be assessed and is not yet ripe for adjudication. *See Texas v. United States*, 523 U.S.

---

[10] This Court notes that plaintiffs in *Grossarth* also alleged that the Forest Service violated the National Forest Management Act of 1976 (NFMA), 16 U.S.C. §§ 1600–1687, because the "proposed sale would leave more than thirty percent of the watershed in cut-over condition." 979 F.2d at 1378. Thus, regardless of whether the Forest Service committed itself to preparing an EIS, the Ninth Circuit also determined that statements suggesting a future sale were not ripe as to plaintiffs' claims under NFMA.

[11] Plaintiffs argue:

> [T]he budget recently submitted by President Obama continues to list the Fiscal Year 2014 reduction of 28 personnel from Newport and Charleston as continuing through both Fiscal Years 2015 and 2016. *If* the budget request for the Coast Guard passes as requested, there will not be any funding for [AIRFAC Newport] in the final nine months of Fiscal Year 2016, which covers the period of January 1 through September 30, 2016.

Third Decl. of Ginny Goblirsch 4–5, ECF No. 40 (emphasis added).

10 – OPINION AND ORDER

296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (citations and internal quotation marks omitted)); *Grossarth*, 979 F.2d at 1379 (concluding that a future timber sale was not ripe because "the nature and effect of that sale cannot yet be assessed.").

## CONCLUSION

For these reasons, defendant's motion to dismiss, ECF No. 36, is GRANTED, and plaintiffs' motion for stay, ECF No. 38, is DENIED.

IT IS SO ORDERED.

DATED this 29th day of April, 2015.

_____
**Michael J. McShane**
**United States District Judge**

11 – OPINION AND ORDER